# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| PAUL D. CRUZ, ARIEL KUMPINSKY, HEATHER AND BRYANT SMITH, ROHIT KHANOLKAR, SHARON GARDNER, AND ARLEN AND LISA LEINER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>RESOLUTE CAPITAL PARTNERS LTD, LLC; HOMEBOUND RESOURCES, LLC; HOMEBOUND FINANCIAL GROUP, LP; LEGACY ENERGY, LLC; CHOICE ENERGY HOLDINGS, LCC; PETROROCK MINERAL HOLDINGS, LLC; MERCURY OPERATING, LLC; MINERVA RESOURCES, LLC; 2X5 ENTERPRISES, LP; THE 2X5, LLC; CRONUS MINERAL HOLDINGS; WEALTH FORMULA INVESTOR CLUB; PROSPERITY ECONOMIC PARTNERS; FOUNDATIONS INVESTMENT ADVISORS, LLC; FINANCIAL GRAVITY WEALTH, INC.; THE HIDDEN WEALTH SOLUTION; THOMAS J. POWELL; STEFAN T. TOTH; TED ETHEREDGE; MIR JAFER ALI JOFFREY; BROOKE NUNES; KIM BUTLER; CHRIS MILES; JEFF CRONIN; CHRISTOPHER LYNN MOST; DEVIN PATEL; and CHARLES OLIVER.<br><br>    Defendants. | Case No.<br><br>Judge:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Paul D. Cruz, Ariel Kumpinsky, Heather and Bryant Smith, Rohit Khanolkar, Sharon

Gardner, Arlen Leiner, and Lisa Leiner ("Plaintiffs"), individually and on behalf of all other

persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint

against Resolute Capital Partners LTD., LLC ("Resolute"), Homebound Resources, LLC

("Homebound"), Homebound Financial Group, LP ("Homebound Financial"), Legacy Energy, LLC ("Legacy"), Choice Energy Holdings, LLC ("Choice Energy"), PetroRock Mineral Holdings, LLC ("PetroRock"), Mercury Operating, LLC ("Mercury Operating"), Minerva Resources, LLC ("Minerva Resources"), 2X5 Enterprises, LP ("2X5 Enterprises"), The 2X5, LLC ("2X5, LLC"), Cronus Mineral Holdings ("Cronus"), Wealth Formula Investor Club ("Wealth Formula"), Prosperity Economic Partners ("Prosperity"), Foundations Investment Advisors, LLC ("Foundations"), Financial Gravity Wealth, Inc. ("Financial Gravity"), The Hidden Wealth Solution ("Hidden Wealth"), Thomas J. Powell ("Powell"), Stefan T. Toth ("Toth"), Ted Etheredge ("Etheredge"), Mir Jafer Ali Joffrey, ("Buck Joffrey" or "Joffrey"), Brooke Nunes ("Nunes"), Kim Butler ("Butler"), Chris Miles ("Miles"), Jeff Cronin ("Cronin"), Christopher Lynn Most ("Most"), Devin Patel ("Patel"), and Charles "Chuck" Oliver ("Oliver") (collectively, "Defendants") alleges the following based upon personal knowledge as to Plaintiffs' own acts, information and belief as to all other matters, based upon, among other things, a review of the defendant's public documents, United States Securities and Exchange Commission ("SEC") filings, press releases regarding reports and advisories about Resolute and Homebound, and information readily available on the Internet. Plaintiffs believe the substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a class action on behalf of a class consisting of all persons and entities other than Defendants who purchased interests in the "Equity Funds" offered by Defendants, including, Resolute, Powell, Toth, Etheredge, Most, or any other salesperson acting on their behalf under Resolute and Homebound, which are the two entities they

respectively controlled, from at least between March 2014 and September 2021 (the "Class Period").

2.     This class action is also on behalf of a class consisting of all persons and entities other than the Defendants who purchased promissory notes, or other "Debt Funds" offered by Defendants, including, Homebound, Powell, Toth, Etheredge, PetroRock, or any other salesperson or promoter acting on their behalf under Resolute and Homebound during the Class Period.

3.     The Equity and Debt Funds offered by Defendants Resolute, Homebound, PetroRock, Powell, Toth, Etheredge, Most, or any other salesperson or promoter acting on their behalf under Resolute and Homebound during the Class Period are securities within the meaning of the Securities Exchange Act of 1934 ("Exchange Act"). Under the the Exchange Act §3(a)(10), and 15 U.S.C. §78c(a)(10) the term "security" includes, but is not limited to, any note, evidence of indebtedness, or investment contract. A promissory note is considered a security as evidence of indebtedness. *See U.S. v. Jones*, 450 F.2d 523, 525 (5th Cir. 1971) (finding "[t]he term "evidence of indebtedness" embraces only such documents as promissory notes which on their face establish a primary obligation to pay the holders thereof a sum of money"). An investment contract is a security if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Investors in Resolute's Equity Funds invested substantial amounts of their retirement into Defendants' investment vehicles, organized as LLC's, with the expectation they would receive monetary distributions from oil and gas wells prospected by Homebound. In addition, Investor's in

Homebound and PetroRock's Debt Funds invested and were sold promissory notes guaranteeing fixed returns ranging from 8% to 12%.

4.  Plaintiffs seek to recover compensable damages caused by the Defendants' violations of the federal securities laws and to pursue remedies under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

5.   Plaintiffs also seek to recover compensable damages caused by the Defendants' violations of Texas state securities laws and to pursue remedies under Tex. Gov't. Code §4008.052 and §4008.055.

## JURISDICTION AND VENUE

6.  The claims asserted herein arise under and are pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

7.  This Court has personal jurisdiction over the Defendants in the Northern District of Texas for several reasons. First, at all times during the Class Period, the operate events and fraud originated in Texas as a result of Resolute, Homebound, Powell, Toth, Etheredge, and Most's scheme to defraud Plaintiffs and Class Members with the assistance of a network of nationwide solicitors. Next, Defendant Resolute maintains offices throughout Texas and Defendant Homebound has its principal place of business in Irving, Texas. Through the use of their lending subsidiaries organized as various LLC's, and promoters advertising and selling Defendants' Equity and Debt Funds to North Texas residents, Defendants' intentional contacts with Texas are sufficient to establish this Court's specific jurisdiction. Further, Institutional Defendants Homebound Financial, Homebound, Legacy, Choice Energy, PetroRock, Mercury Operating, Minerva Resources, and Cronus all maintain their principal place

4

of business within this District in Irving, Texas. Institutional Defendants 2X5 Enterprises and 2X5, LLC both maintain their principal place of business within this District in Keller, Texas. Individual Defendants Toth and Etheredge both reside within this District in Frisco, Texas and Dallas, Texas. Individual Defendant Kim Butler resides in Mt. Enterprise, Texas.  Defendants Resolute, Homebound, and PetroRock, and their control persons Toth, Powell, Etheredge, and Most used unlicensed brokers, including Individual Defendants Joffrey, Nunes, Butler, and Cronin to sell unregistered securities to North Texas residents. Lastly, Throughout the Class Period Defendant Wealth Formula actively engaged in business with Texas entities including Resolute, Homebound, Homebound Financial, and PetroRock to solicit and administer the investment into their oil and gas investments through Wealth Formula's founder, Buck Joffrey. Throughout the Class Period, Defendants Foundations and Financial Gravity actively engaged in business with Texas entities including Resolute, Homebound, Homebound Financial, and PetroRock to solicit and administer the investment into their oil and gas investments through Defendant Devin Patel. Throughout the Class Period, Defendant The Hidden Wealth Solution actively engaged in business with Texas entities Resolute, Homebound, Homebound Financial, and PetroRock to solicit and administer investors' decisions to invest in their oil and gas investments.

8.    This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act because the action arises under the Exchange Act and laws of the United States.

5

9.    This Court has supplemental jurisdiction over all other non-federal question claims pursuant to 28 U.S.C. §1367 because the other claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

10.   Venue is proper in this Judicial District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conduct business and have their principal places of business in this Judicial District.

11.   In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, seminars, dinners, and radio broadcasts.

## **FACTUAL BACKGROUND**

12.   This is a class action on behalf of all persons and entities that purchased or otherwise acquired equity securities in the form of membership interests in pooled investment vehicles ("Equity Funds"), and all persons and entities that purchased debt securities in the form of promissory issued by Defendants' lending subsidiaries ("Debt Funds") solicited by the Defendants or any other promoter acting on their behalf.

13.   Beginning in 2016, Defendants Resolute, Homebound, Toth, Powell, Etheredge, and Most along with promoters and salespersons acting on their behalf, sold more than $250 million worth of unregistered equity and debt securities to retail investors.

14.   The Equity Funds were pooled investment vehicles that sold membership interests in limited liability companies ("LLCs") to investors. These LLCs, controlled by Resolute and Homebound, then purchased a percentage working interest in oil and gas wells

6

prospected by Homebound. The Equity funds in the form of LLC interests offered during the Class Period included: Strategic Energy Assets ("SEA") III, IV, V, VI, VII, and VIII, and Homebound Resources ("HBR") VI.

15.     Defendants Resolute, Powell, Most, and their affiliated salespersons sold investors these equity securities with the promise of monetary distributions based on Homebound's efforts to identify, buy, and manage revenues derived from oil and gas wells. Collectively, Defendants raised over $60 million from investors in these Equity Funds during the Class Period.

16.     Plaintiffs and Class Members collectively invested millions of dollars in these Equity Funds only to receive dismal returns despite promises to the contrary.

17.     Defendants Homebound, PetroRock, Toth, Etheredge, and affiliated salespersons also sold debt securities to investors in the form of promissory notes, which promised fixed returns ranging from 8% to 12% per year. These debt offerings were issued in the form of Loan Agreements by lending subsidiaries wholly owned and controlled by Defendant PetroRock. PetroRock's sole managing member is Homebound Financial. Homebound Financial is believed to be owned or controlled by Mr. Stefan Toth.

18.     Such debt offerings included: HBR VI, SEA III, PetroRock Mineral Holdings ("PRMH") Lender's Fund, PRMH II, III, IV, Choice Energy I, Legacy Energy, Legacy Energy II, Choice Energy II, and Choice Energy III. Collectively, Defendants raised over $192 million during the Class Period from these debt offerings.

19.     Funds raised by Defendants' subsidiaries through the issuance of promissory notes were then loaned to PetroRock to finance the acquisition of oil and gas leases, business ventures and investments, and in certain situations, pay other debts incurred by

7

PetroRock. Each of the notes connected to the Loan Agreements agreed to provide investors with a perfected security interest in the assets of PetroRock.

20.    Defendants Resolute, Homebound, Toth, Powell, Etheredge, and Most utilized promoters and other "sales agents", who employed unregistered individuals, to solicit, advertise, and explain their Equity and Debt funds to retail investors. Further, Defendants' Toth and Powell, neither of whom have ever been registered with FINRA or the SEC, each participated in the solicitation and sale of Equity and Debt funds during the Class Period.

21.    Retail investors were then introduced to Resolute, Homebound, and PetroRock's products where they were convinced to invest their retirement funds by either purchasing membership interests in LLC's controlled by Defendants or extend a loan to finance companies owned by the Defendant PetroRock.

22.    Defendants' offerings and use of unregistered salespersons has already subjected them to regulatory action by the Securities Exchange Commission ("SEC") (Order No. 2021-193), and other state regulatory agencies, such as the State of Washington Department of Financial Institutions Securities Division (Order No. S-19-2672-20-SC03).

23.    On May 7, 2021, the State of Washington's Department of Financial Institutions Securities Division entered a consent order ("Consent Order") as a result of a settlement with the Defendants. The Consent Order found that Defendants violated Washington's Securities and Investments statutes by offering/selling unregistered securities, using unregistered securities brokers and salespersons, and making or omitting statements of material fact that were necessary to refrain from misleading

8

investors. Pursuant to the Consent Order, Defendants were found jointly and severally liable and were ordered to pay fines of $200,000.00, and $63,525.00. This was the first public notice that Defendants were selling unregistered securities.

24.     On September 24, 2021, the SEC issued a Cease-and-Desist Order (the "Order") making findings and imposing remedial sanctions. The Order named Resolute, Homebound, Powell, and Toth as Respondents alleging violations of Securities Act Sections 5(a), 5(c), 17(a)(2) and (3), and 15(a). The Order imposed sanctions upon the Defendants, including a suspension from involvement in any unregistered securities offering for two (2) years, posting a link to the SEC's Order on a prominent area of websites under Resolute and Homebound's control, engage a consultant to review Resolute and Homebound's undertakings, and the payment of monetary penalties. This was the first public notice that Defendants Resolute, Homebound, Powell, and Toth sold securities unregistered with the SEC and made material misstatements and omitted material facts in offering their equity and debt securities.

25.     On or about August 2021, and in between the Washington Department of Securities Consent Order and the SEC's Cease-and-Desist Order, Resolute Energy Capital ("Resolute Energy") took over and assumed the management of PetroRock's assets when Defendants PetroRock and Toth failed to honor guarantees made to investors. On August 2, 2021, Investors with PetroRock's Debt Funds were first informed that PetroRock defaulted on their loans with such Funds through a notice sent by Resolute Management Services.

26.     PetroRock's failure to pay its debt owed to their lending subsidiaries caused a stop in investor's interest payments. In response, Resolute, on behalf of PetroRock, initiated

a court supervised wind up against Defendant Toth and his affiliated entities, including Defendants, Minerva, Mercury, 2X5 Enterprises, 2X5, and Cronus. Many investors in the Defendants' Equity and Debt funds, as alleged and discussed infra, are non-accredited investors naïve to the omissions and activities of the Defendants. Unfortunately, many are realizing the significant losses they have incurred by having entrusted their retirement funds with the Defendants. The Plaintiffs' and Class Members' futures are uncertain due to the Defendants' material omissions and mishandling of retirement funds.

27.     Plaintiffs did not know and could not have known that they were defrauded by Defendants until September 24, 2021, when the SEC Cease-and-Desist Order was entered against Defendants Resolute, Homebound, Powell, and Toth. The SEC's September 24, 2021 Cease-and-Desist Order was the first public notice that investors with Defendants Resolute, Homebound, Toth, and Powell may have fallen victim to the parties' fraud. The SEC Cease-and-Desist Order undertook to put as many investors as possible on notice of the Defendants' fraudulent activities by requiring Defendants "post a clearly referenced link to the Order in a prominent area of the home page of all RCP and Homebound web sites, and all other commercial web sites under [Defendants'] direction or control." (*See* **Exhibit 1**).

28.     Up and until August of 2021, investors with Resolute and Homebound continued to receive, although in many instances, disheartening returns from their investments in Resolute's equity funds and Homebound's debt funds. But no fraudulent activity was suspected or evident to the investor. Even when interest payments from investments with PetroRock ceased due to the company's default, investors had no guarantees that

they had fallen victim to Resolute, Powell, Homebound, and Toth's fraud. In fact, communications received from Resolute Energy following PetroRock's default reassured investors that, "[i]nterest payments are accruing for all Compounded, Simple, and Amortized loans". It was not until the Order entered by the SEC on September 24, 2021, that any investors would have been on notice that they were involved in a scheme contaminated with fraud and material omissions.

## PARTIES

### A. Plaintiffs

29.   Plaintiff Rohit Khanolkar is an individual domiciled and residing in Frisco, Texas. Plaintiff Khanolkar invested $400,000.00 in Resolute SEA VII on July 6, 2018.

30.   Plaintiff Paul D. Cruz is an individual domiciled in Austin, Texas. Plaintiff Cruz invested $50,000.00 in Resolute SEA VII on December 12, 2018, and on December 29, 2018.

31.   Plaintiff Ariel Kumpinsky is an individual domiciled in Austin, Texas. Plaintiff Kumpinsky invested $75,000.00 in Resolute SEA VII on August 12, 2019.

32.   Plaintiffs Heather and Bryant Smith are individuals domiciled in Georgetown, Texas. Plaintiffs Heather and Bryant Smith invested approximately $150,000.00 with Homebound on November 19, 2019.

33.   Plaintiff Sharon Gardner is an individual domiciled and residing in Barefoot Bay, Florida. Plaintiff Gardner purchased a promissory note and loaned $136,000.00 to Legacy Energy at a 9% rate on July 11, 2018.

34.   Plaintiffs Arlen Leiner and Lisa Leiner are individuals domiciled and residing in Land O Lakes, Florida. Plaintiffs purchased promissory notes through Choice Energy

Holdings-III, LLC on August 26, 2019, October 22, 2019, and November 6, 2019. The couple also purchased promissory notes through Advantage Capital Holdings-I, LLC on November 6, 2019, for a total investment of over $500,000.00. The Plaintiffs have suffered an economic loss of $340,125.00, including principal and interest amounts.

## B. Individual Defendants

35.     Defendant Thomas J. Powell is an individual domiciled and residing in Reno, Nevada. Powell is the owner of Resolute Capital Partners LTD, LLC and other related entities including, Resolute Capital Advisors and Resolute Energy, while also serving as Resolute Capital's Senior Managing Partner. During the Class Period, Powell was also the owner and Chief Operating Officer of Resolute Capital Advisors, LLC, which is an investment adviser responsible for advising Resolute and Homebound funds.

36.     Defendant Stefan T. Toth is an individual domiciled in Frisco, Texas. Toth is the owner, Chief Executive Officer of Homebound Financial. Toth is also responsible for Homebound's subsidiaries, including PetroRock Mineral Holdings, LLC. Further, Toth indirectly owns and controls Defendant Mercury through entities such as Homebound Financial, and he retains 100% of the voting units in Minerva through entities such as Minerva Resources Management, LLC ("Minerva Management") and Cronus.

37.     Defendant Ted Etheredge is an individual domiciled in Dallas, Texas. Etheredge was the co-founder and Chief Operating Officer of Homebound, and also owned and controlled PetroRock with Defendant Stefan Toth.

38.     Defendant Mir jafer ali Joffrey, also known as Buck Joffrey, is an individual domiciled in Montecito, California. Buck Joffrey, a former surgeon, is the founder of Wealth

Formula. Joffrey was not licensed with FINRA or the SEC at any time during the Class Period. During the Class Period, Joffrey solicited Plaintiffs to invest with Resolute. He accounted for raising at least $300,000.00 worth of investments in Resolute securities.

39.     Defendant Brooke Nunes is an individual domiciled in San Diego, California. During the Class Period, Nunes acted as a salesperson and Assistant Vice President for Resolute. Nunes was not licensed as a securities broker in Texas at any time during the Class Period. Nunes sold at least $75,000.00 worth of Resolute securities to Texas citizens during the Class Period.

40.     Defendant Kim Butler is an individual domiciled in Mt. Enterprise, Texas. During the Class Period, and while she was promoting Resolute securities, Butler's license as an Investment Adviser Representative was revoked on September 9, 2022 by the Texas Securities Commissioner for selling securities in another, unrelated Ponzi scheme involving Woodbridge Wealth, LLC ("Woodbridge"). Butler has never been registered as a dealer with the Texas Securities Commissioner but sold at least $75,000.00 in Resolute securities to Texas citizens during the Class Period. Butler is the founder of Partners for Prosperity.

41.     Defendant Chris Miles is an individual domiciled in Draper, Utah licensed with FINRA as an investment adviser and broker. During the Class Period, Miles consistently referred investors across the United States and Texas to invest at least $365,000.00 in Resolute securities. In connection with his referrals, Miles emphasized the past successful performance of Resolute securities to investors.

42.     Defendant Jeff Cronin is an individual domiciled in Atlanta, Georgia. During the Class Period, Cronin sold at least $710,000.00 worth of Resolute securities to investors

across the United States, including to Texas citizens. Cronin advised investors on expected returns. At no time was he registered with FINRA or the SEC as a broker or investment adviser.

43.    Defendant Christopher Most is an individual domiciled in Minneapolis, Minnesota. During the Class Period Most served as Resolute's Senior Vice President and was licensed with FINRA as a broker until January of 2022. Most sold at least $150,000.00 worth of Resolute securities to investors across the United States, including to Texas citizens.

44.    Defendant Devin Patel is an individual domiciled in Sanford, Florida. During the Class Period Patel was a registered investment adviser with Financial Gravity and Foundations. Patel was responsible for the investment of at least $350,000.00 worth of Resolute and Homebound's equity and debt securities during the Class Period.

45.    Defendant Chuck Oliver is an individual domiciled in Lake Mary, Florida. During the Class Period Oliver was the founder of The Hidden Wealth Solution. Oliver supervised Patel and the two collaborated to be responsible for the investment of at least $350,000.00 worth of Resolute and Homebound's equity and debt securities during the Class Period.

## C.  Institutional Defendants

46.    Defendant Resolute Capital Partners LTD., LLC is a private investment company registered in Nevada that maintains offices in Dallas, Texas, San Francisco, California, and Minneapolis, Minnesota. Resolute's principal place of business is in San Francisco, California. Resolute created multiple debt and equity investments in oil and gas well revenues identified by Homebound.

14

47.     Defendant Homebound is Texas company registered in Texas, with its principal place of business in Irving, Texas. Homebound facilitates Resolute's investment offerings by identifying and purchasing oil and gas wells. Homebound, is a subsidiary of Homebound Financial.

48.     Defendant Homebound Financial is a limited partnership with its principal place of business in Irving, Texas. Homebound Financial is the principal to Homebound Resources, LLC.

49.     Defendant Legacy Energy, LLC is a Delaware company with its principal place of business in Irving, Texas.

50.     Defendant Choice Energy Holdings, LLC is a Delaware company with its principal place of business in Irving, Texas.

51.     Defendant PetroRock Mineral Holdings, LLC is a Texas company, with its principal place of business in Irving, Texas. PetroRock's sole managing member is Homebound Financial.

52.     Defendant Mercury Operating, LLC is a Texas limited liability company with its principal place of business in Irving, Texas. On information and belief, Mercury is indirectly owned and controlled by Defendant Toth.

53.     Defendant Minerva Resources, LLC is a Texas limited liability company with its principal place of business in Irving, Texas. On information and belief, Defendant Toth holds 100% of the voting units in Minerva through various entities, including Defendant Cronus.

54.     Defendant 2X5 Enterprises LP is a Texas limited partnership with its principal place of business in Keller, Texas.

55.     Defendant The 2X5, LLC is a Texas limited liability company with its principal place of business in Keller, Texas. It is believed that Defendant The 2X5, LLC is the general partner of Defendant 2X5 Enterprises LP.

56.     Defendant Cronus Mineral Holdings is a Texas limited liability company with its principal place of business in Irving, Texas.

57.     Defendant Wealth Formula Investor Club is an Illinois private equity group with its principal place of business in Winnetka, Illinois. Buck Joffrey is the founder of Wealth Formula.

58.     Defendant Prosperity Economic Partners is a Texas Limited Liability Company based out of Mount Enterprise, Texas. Defendant Butler is the owner and holds titles as the President and Chief Compliance Officer. During the Class Period, Prosperity Economic Partners facilitated Resolute, Homebound, and PetroRock investments to Plaintiffs and Class Members during the Class Period and until their withdrawal from registration in June of 2021.

59.     Defendant Foundations Investment Advisors, LLC is an Arizona Limited Liability Company with its principal place of business in Phoenix, Arizona. Foundations is an investment adviser that facilitated Resolute, Homebound, and PetroRock investments to Plaintiffs and Class Members during the Class Period.

60.     Defendant Financial Gravity is a Texas company with its principal place of business in Austin, Texas. Financial Gravity is an investment adviser that facilitated Resolute, Homebound, and PetroRock investments to Plaintiffs and Class Members during the Class Period.

16

61.     Defendant The Hidden Wealth Solution is a Florida financial services company located in Lake Mary, Florida. The Hidden Wealth Solution is also known as "Chuck Oliver American Equity Advisors Group". Through Defendants Devin Patel and Chuck Oliver, Hidden Wealth facilitated Resolute, Homebound, and PetroRock investments to Plaintiffs and Class Members during the Class Period.

## SUBSTANTIVE ALLEGATIONS

**A. Defendants omitted material facts regarding the equity securities they sold to investors, including the Plaintiffs and Class Members.**

62.     Investors in Resolute and Homebound's Equity Funds, including SEA VII, were provided incomplete and unsupported information in offering materials regarding oil well productions based on unfounded projections. Defendants Powell and Toth had the ultimate authority over the distribution of such offering materials. Defendant Powell approved the offering materials on behalf of Defendant Resolute and Defendant Toth approved the offering materials on behalf of Defendant Homebound. In particular, according to the SEC's September 24, 2021 Order, the SEA VII offering materials included unsupported oil well production projections of 2,210 barrels per day. In actuality, SEA VII was only producing 199 barrels per day during the Class Period and Defendants knew or should have known of this material discrepancy.

63.     Based on the well's prior performance, Defendants knew, or but for reckless disregard for the truth should have known, of these low production numbers and that such projections of producing 2,210 barrels per day was unsupported and incapable of being met. Nonetheless, Defendants Resolute and Homebound remained silent on the previous production numbers in their offering materials and continued providing

17

investors with misleading projections that, based on the well's previous performance, should have been corrected.

64.     Next, Resolute, Powell, Toth, and Most, with the collaboration of their promoters such as Joffrey, continuously touted Resolute's equity securities as a safe oil and gas investment. Specifically, Powell, Toth, Most, and Joffrey projected the oil and gas investments to be profitable if the price of oil was anything over $16 per barrel. This unsupported projection of profitability at such a low price point was used to entice investors to invest and described as being possible due to the success of other Homebound wells that were "proven" to be successful. Notwithstanding the fact that Homebound's "proven", wells were actually producing barrel numbers that were significantly less than what was described to investors, Powell, Toth, Most, and Joffrey omitted that they had no practical basis to projectprofitability at prices as low as $16 per barrel. Powell, Toth, Most, and Joffrey omitted that these projections were not based on any engineering study, but instead, were based on false production numbers and projections never capable of being met.

65.     In addition to Resolute's equity securities being marketed as a highly profitable investment based on false production numbers, investors were further lured to invest due to the purported tax benefits available for oil and gas investments. Resolute, Powell, Toth, and Most, with the collaboration of promoters such as Joffrey, Cronin, and Miles, touted Resolute's equity securities as a desirable investment for W-2 earners due to the investments guaranteed tax benefits. The apparent tax benefits associated with Resolute's oil and gas, equity securities were the sole reason many investors chose to invest in funds such as HBR VI and SEA III-VIII. Specifically, in

communications with investors, Joffrey claimed "[t]he current offering is 100 percent tax deductible—even for W-2 income earners!". In addition, according to the SEC's September 24, 2021 Order, Powell drafted and distributed a document to investors entitled "Tax Benefits of U.S. Oil & Gas Investments", which reinforced the tax benefits associated with investments in oil and gas. Despite the constant circulation of materials boasting of apparent tax benefits, Resolute, Powell, Toth, Most, Joffrey, Cronin, and Miles omitted that the benefits were not available to retirement account investors. Powell and Toth's active, albeit erroneous, involvement in handling investors' funds placed them on notice that numerous investors utilized traditional retirement accounts to invest in Resolute's unregistered oil and gas offerings. Regardless, Powell, Toth, and Most chose to remain silent and allow the inapplicability of the tax benefits to retirement investors to remain undisclosed.

66.     Defendants Resolute and Powell, as the ultimate authority over Resolute's offering materials, failed to disclose that Resolute was not using SEC-registered and FINRA-member broker-dealers to solicit their equity securities. The SEA disclosure package gave investors the false impression that Resolute and Homebound's equity securities were only being solicited solely through SEC-registered and FINRA-member broker/dealers by stating in relevant part:

> The Company may enter into selling agreements with a broker/dealer(s) who is (are) registered with the SEC, Financial Industry Regulatory Authority, Inc., and/or other necessary state or other regulators to sell the LLC interests. Any such registered broker/dealer may be entitled to receive selling commissions ("Selling Commissions") up to 11.5% of the total purchase price of the LLC Interests which it sells. A broker/dealer may, in addition, charge a monthly servicing fee which is not anticipated to exceed .50% of the total LLC Interests which it sells.

67.    Defendants Resolute and Powell also represented in their SEA VIII private placement memorandum that their "Plan of Distribution" includes the use of FINRA-member broker/dealers by stating in relevant part:

> In general, this Offering is expected to utilize unrelated, third-party broker-dealers ("Participating Dealers") in connection with an offering of Shares. As used in this offering memorandum, the term Participating Dealers includes the Managing Dealer, other broker-dealers who are members of the Financial Regulatory Authority, Inc. ("FINRA"), and those exempt from registration as a broker-dealer, including certain registered investment advisers affiliated with or duly registered with a broker-dealer.

68.    Despite these representations, Defendants Resolute and Powell failed to inform investors that they were actively engaging with individuals unlicensed by the SEC or FINRA to sell Resolute's equity securities, promote Resolute's equity offerings, and prompt investors to relinquish their retirement to purchase HBR VI, and SEA III-SEAVIII. According to the SEC's Order entered on September 24, 2021, "the offering materials stated that the securities were being sold by SEC-registered and FINRA-member broker-dealers. In fact, the primary sellers of the securities were unregistered brokers." During the Class Period, despite never having been licensed as a broker/dealer or investment adviser with the SEC or FINRA, Resolute and Powell employed Defendant Jeff Cronin to sell their equity securities to investors, including to Plaintiff Paul Jeffrey Cruz. During the Class Period, promoter and Defendant Buck Joffrey praised Resolute and the success of their oil and gas ventures on his podcast distributed by Defendant Wealth Formula, and engaged in telephone conversations whereby he referred Plaintiffs and Class Members to invest in Resolute. At no time during the Class Period was Buck Joffrey registered with the SEC or FINRA as a broker or investment adviser. Together, these unlicensed Defendants are responsible

for more than $1,000,000.00 worth of Resolute equity securities sold to investors during the Class Period.

69.    Resolute's offering materials attempted to bolster their investments credibility by representing that the investments were being solicited by licensed, SEC-registered, FINRA-member broker/dealers. However, the reality was such materials materially omitted the solicitation scheme Resolute and Homebound were employing and omitted to state contrary accurate facts.

70.    Instead of remaining detached from the offerings to investors, Defendants Powell and Toth, neither of whom have ever been registered as a broker or investment adviser with the SEC or FINRA, directly sold Resolute's equity securities to investors, actively engaged with investors by advising them on the merits of participation in the equity investments, oversaw the handling of investor's funds, and had ultimate authority over the offering materials provided to investors.

71.    Multiple promoters, if licensed at all, had their licenses revoked and, in one case, found to have sold unregistered securities in another massive Ponzi scheme. Defendant Kim Butler had her license revoked as an investment adviser representative for selling over $5,000,000.00 worth of unregistered securities in Woodbridge Wealth, LLC through Prosperity. Not only has Butler never been registered as a securities broker, but the SEC also filed a complaint against Woodbridge for engaging in a massive Ponzi scheme, which raised over $1.2 billion. Butler, a registered investment adviser representative at the time, was found to have received over $300,000.00 in commissions from the sale of Woodbridge securities despite being unlicensed as a broker.

21

72.     Defendants Resolute and Powell's failure to adequately disclose the true offering, sale, and soliciting scheme in their offering materials that the securities were not always being furnished by SEC-licensed and FINRA-member broker/dealers was a material omission.

73.     Lastly, Defendants Resolute and Powell omitted to state material facts that their equity securities were not exempt from registration. Defendants Resolute and Powell claimed exemptions in the offering materials from registration under Section 4(a)(2) of the Securities Act of 1933 as a private offering, and Rule 506(b) of Regulation D.

74.     SEA VII offering materials state:

> "This offering has not been registered with the Securities and Exchange Commission ("SEC"). We believe we are exempt from registration under Section 4(a)(2) of the Securities Act of 1933, as amended (the "Act") and 17 CFR §230.506(B), a regulation issued by the SEC, and possibly other exemptions as well."

> "[T]his is a private offering to accredited investors only and we believe we are exempt from registration of this Offering under Section 4(a)(2) Section 4(a)(2) of the Securities Act of 1933 and as amended (the "Act"), 17 CFR Section 230.506(B), a regulation issued by the SEC, and possibly other exemptions as well. This Offering is being issued in reliance upon our exemption(s) under applicable state and federal laws; however, it is possible that an audit or investigation by the SEC and/or FINRA will determine to the contrary, that we are not exempt."

75.     SEA VIII offering materials state:

> "The Shares are being offered in reliance upon an exemption from the registration provisions of the Securities Act and state securities laws applicable to only to the offers and sales to investors meeting the suitability requirements set forth in this memorandum. This offering is being conducted in reliance under Rule 506(b) of Regulation D promulgated under the Securities Act. As such, a failure to comply with Rule 506(b) requirements could result in the loss of the exemption from registration. Since the offering is a non-public offering and the Shares are only being offered to accredited investors, certain information that would be required if the offering were not so limited has not been included in this offering Memorandum, including but not limited to, audited financial statements. Thus, prospective investors will not have this information available to review when deciding whether to invest in the shares."

76.     Despite Resolute and Powell claiming exemption from registration, they made no effort to abide by the available exemption's requirements. Resolute and Powell represented in offering materials that they were excused from registration and covered by such exemptions while hiding behind the fine print that it "was possible" the exemptions may not be available. However, Resolute and Powell offered these securities with total disregard for the exemptions' conditions by offering through general solicitation and failing to verify the accredited status of investors, which resulted in the sale of more than $250 million worth of unregistered securities to hundreds of unaccredited investors including the Plaintiffs and Class Members. Defendants utilized promoters, such as Buck Joffrey, to endorse Defendants' securities in podcasts, phone calls, email memoranda, and other public means. Defendants preyed upon unaccredited investors who are precisely the class of persons the securities laws and registration requirements are designed to protect.

**B. Defendants Homebound, Homebound Financial, PetroRock, Toth, and Etheredge omitted material facts regarding the debt securities they sold to investors, including Plaintiffs Sharon Gardner, Arlen Leiner, Lisa Leiner, and other Class Members, which resulted in the diversion of investors' funds to personally benefit Toth and his controlling entities.**

77.     Homebound, Homebound Financial, PetroRock, Toth, and Etheredge (collectively the "Homebound parties") omitted the true purpose and use of the funds raised through Legacy Energy's issuance of promissory notes, which raised approximately $39.7 million with an 8-9% interest rate during the Class Period.

78.     According to such offering materials, which were prepared by Defendant Toth, Legacy Energy's primary purpose was to "finance the business of PetroRock" in connection

23

with its oil and gas interests and repay other debt. Specifically, the loan agreement between investors and Legacy stated:

> "It is anticipated that PetroRock will use the Project Loan to fund its business operations and investments relating to owning or holding (directly or indirectly) oil, gas, or other mineral royalties or leases, or fractional interests therein, or certificates of interest or participation in or investment contracts relative to such royalties, leases or fractional interests (collectively "Oil and Gas Interests"), and may include, without limitation, repayment of other debt, loans, and promissory notes, marketing fees, legal fees, future acquisition of assets, and cash reserves relating to its Oil and Gas Interests. Borrower will be accepting loans, for the same PetroRock business and investment purposes, from other lenders ("Other Lenders"), up to an estimated aggregate principal sum of $50,000,000.00 and not to exceed an aggregate sum of $55,000,000.00."

79.    The Homebound parties failed to disclose the true purpose of Legacy Energy's debt offering and use of the funds raised from investors in their offering materials. Unbeknownst to investors, the Homebound parties were, in fact, not using investor's loans to "fund [PetroRock's] business operations and investments" relating to the Oil and Gas Interests. Instead, the Homebound parties engaged in a "related-party" transaction to close out other debt funds owned by the Homebound parties.

80.    According to the Second Amended Petition in Intervention and Third Party Petition by Secured Investors in Resolute and Homebound's Debt Funds, (see *Second Amended Petition in Intervention and Third Party Petition by Secured Investors*; Cause No. DC-22-04656 in the District Court of Dallas County, Texas, 101st Judicial District) the result was an undisclosed, Ponzi scheme where the revenue raised by the Homebound parties' Legacy Energy fund was loaned to PetroRock, who in turn loaned these funds to Texas Mineral Holdings ("TMH"), an entity owned by Homebound, Powell, and other Defendants. Texas Mineral Holdings then utilized such funds to purchase the oil and gas wells owned by the Homebound parties' funds, HBR VI and SEA III. Equity

and debt investors in HBR VI and SEA III were then paid contributions from this sale, while Homebound and Toth failed to disclose that such returns were not a result of the Fund's oil and gas ventures.

81.    The Homebound parties continued to misrepresent the success of HBR VI and SEA III by claiming the investment returned $93 million for debt investors, and that equity investors received an average return of 11%.

82.    At no time did the Homebound parties disclose to investors that their invested funds were used to effectuate such a related-party transaction to pay back earlier investors with other investors' funds. According to the SEC's Order entered on September 24, 2021, "[t]he offering materials disclosed that the issuers would lend funds to PetroRock and that PetroRock would use the funds to acquire oil and gas leases, fund its business operations and investments, and, in certain offerings, make interest payments on other PetroRock debt. These disclosures were materially misleading because investors were not told that the majority of assets raised would be used to make payments to investors in other Debt Funds."

83.    Eventually, the poor performance of PetroRock's oil and gas ventures rendered them unable to maintain the scheme, and they began defaulting on their loans with Defendant Resolute. Debt investors, such as those with Legacy Energy, received dismal returns that did not compare to their initial capital contribution.

84.    Next, not only did Defendants fail to mention that the funds raised would be used to make payments to investors in other Debt and Equity Funds, but the Homebound parties also failed to disclose their scheme to divert investor funds for their personal gain through a series of conflict-ridden transactions.

85.     For example, when Toth was not using raised funds to repay investors invested in other

Debt and Equity Funds, he was directing PetroRock to employ Defendant Mercury, an

entity owned and controlled by Toth, to serve as the operator for those oil and gas

interests financed by PetroRock. According to PetroRock's Original Petition for Court

Supervised Wind Up (see *Original Petition for Court Supervised Wind Up and Related

Relief*; Cause No. DC-22-04656 in the District Court of Dallas County, Texas, 101st

Judicial District), Toth owns and controls Mercury and, therefore, bled PetroRock dry

with investors' funds, which were supposed to be used to finance PetroRock's oil and

gas ventures, by charging excessive operating fees to the point where PetroRock owed

Mercury more than $23 million as of May 24, 2022.

86.     Further, as if Toth's personally motivated transactions were not sufficiently

deplorable, Toth directed PetroRock to sell oil and gas interests originally purchased

with investor funds, and then funneled the proceeds from such sales to another entity

he owned and controlled, Defendant Minerva. Toth holds 100% of the voting rights in

Minerva through various entities, including Minerva Resources Management, LLC

and Defendant Cronus. In turn, Minerva and Toth used such proceeds to fill their own

pockets and purchase oil and gas interests operated by major operators such as Conoco.

87.     In sum, investors, including Plaintiffs Sharon Gardner, Arlen Leiner, and Lisa Leiner,

extended loans to LLC's, including Legacy Energy and Choice Energy, owned and

operated by PetroRock and Toth. In exchange for extending such loans, investors were

provided promissory notes guaranteeing that the funds would be used to acquire oil

and gas leases, fund PetroRock's business operations, and in certain situations, make

interest payments on other debt. Instead of adhering to the guarantees provided in the

Fund's disclosures, Defendants PetroRock and Toth omitted that such funds would be used to repay other investors or, at the expense of Plaintiffs and Class Members, used to directly benefit Toth and entities he controlled.

88.     Lastly, the Homebound parties omitted material facts regarding the true availability of cash reserves to provide a safety net for lenders invested in the PRMH Lenders Fund. Specifically, offering materials created by the Homebound parties for the PRMH Lenders Fund represented that 20% of all funds received would be held in reserve for "cash reserves" by PetroRock. During the Class Period, the PRMH Lenders Funds (PRMH – PRMH IV) raised approximately $81,672,000.00. Therefore, the Homebound parties and PetroRock should have maintained approximately $16,334,400.00 in "cash reserves" to repay investors. However, according to the SEC Order entered against Resolute, Homebound, Powell, and Toth, PetroRock had "less than $100,000 in cash, with only $12,600 earmarked for the PRMH Lenders Funds" by the end of 2019. Plaintiffs and other investors similarly situated have yet to have their principal loan amount repaid after assurances from the Defendants that such amount would be immediately repaid upon demand.

89.     Plaintiffs maintain these allegations of Defendants' misconduct with confidence that upon further discovery and investigation additional examples of misconduct will unfold.

## CLASS ACTION ALLEGATIONS

90.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

91.     Plaintiffs brings this action as a class action, pursuant to Federal Rules of Civil Procedure 23, on behalf of a class consisting of all persons and entities that invested

27

in Resolute and Homebound's equity and debt securities offerings during the Class Period (the "Class"). Excluded from the Class are (1) Defendants, (2) present or former executive officers or directors of Defendants, and members of their immediate families, (3) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (4) any entities in which Defendants have or had a controlling interest, or any affiliate of Defendants. Also excluded are the Judge or Magistrate Judge and their staffs.

92.     A class action is proper because "the class is so numerous that joiner of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). Defendants offered equity and debt investments in oil and gas ventures from 2016 until 2020. As such, the exact number of Class members are unknown to the Plaintiffs at this time and can only be ascertained through appropriate discovery. Based upon information and belief, there are potentially hundreds of members in the putative Class. Investors and other members of the Class may be identified from records maintained by Defendants or its transfer agent.

93.     A class action is proper because "there are questions of law or fact common to the class," and such questions predominate over individualized questions affecting sole members of the Class. Fed. R. Civ. Pro. 23(a)(2). Common questions for the Class include:

      i.   Whether Defendants' acts violated the applicable federal and state securities laws as alleged herein.

      ii.  Whether the offering materials omitted and/or misrepresented material facts about the business, operations, finances, and prospects of Defendants; and

        iii.   To what extent the members of the Class have sustained damages and the proper measure of damages.

94.     A class action is proper because "the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. Pro. 23(a)(3). Plaintiffs' claims are typical of the claims of the putative Class members, and they were similarly affected by the Defendants' uniform misconduct in violation of federal and state securities laws.

95.     A class action is proper because Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). This is so because Plaintiffs' interests are not adverse to the class, and they have retained counsel that is competent and has vast experience in securities class actions.

96.     A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

29

## CAUSES OF ACTION

**A. First Cause of Action: Violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5**

97.   Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

98.   This cause of action is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5, on behalf of the Plaintiffs and other members of the Class, against Defendants Resolute, Homebound, Homebound Financial, PetroRock, Powell, Toth, Etheredge, and Most based on their use of manipulative and deceptive schemes, projects, and devices made in connection with the sale of unregistered securities.

99.   The above-mentioned Defendants directly or indirectly, by means of interstate commerce employed a manipulative or deceptive device in connection with the sale of their equity and debt securities by directly, and through various offering materials, omitting material information necessary for investors to make informed decisions regarding their decisions to invest. The Defendants Resolute, Powell, Toth, and Most's manipulative scheme included the omission of genuine Resolute oil and gas well profitability projections, the unavailable tax benefits to retirement account investors, accurate productions numbers for oil and gas wells their equity funds were invested, the use of SEC-registered and FINRA-member broker/dealers, and the true status of the equity securities' exemption from registration. Defendants Homebound, Homebound Financial, PetroRock, Toth and Etheredge, also employed a manipulative scheme to defraud investors by omitting material facts concerning the purpose and use of investors' funds, including the diversion of funds to repay older investors and facilitate Toth's self-interested transactions with other Defendants such as Minerva,

and the availability of sufficient cash reserves as represented in the debt fund's offering materials.

100.     During the time of such deceptive and manipulative practices, the above-mentioned Defendants were engaging in acts, practices, a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Defendants' equity and debt securities during the Class Period.

101.     The above-mentioned Defendants' deceptive and manipulative practices have directly and proximately caused Plaintiffs and Class members to experience serious economic harm. Plaintiffs and Class Members have lost substantial amounts in retirement savings leaving their financial future uncertain

**B.  Second Cause of Action: Offeror or Seller Liability: Untruth or Omission Under Tex. Gov't Code §4008.052(a)**

102.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

103.     This cause of action is brought pursuant to Tex. Gov't Code §4008.052(a), on behalf of the Plaintiffs and Class Members against Defendants Resolute, Homebound, Homebound Financial, PetroRock, Powell, Toth, Etheredge, and Most based on omissions that Defendants made in connection with the offer and sale of equity and debt securities during the Class Period.

104.     A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to purchase a security because it would significantly alter the total mix of information made available. A reasonable investor would consider information regarding the support and accuracy of enticing profitability projections, inapplicability of promoted tax benefits to retirement investors, an oil and gas investment's true production numbers, SEC and FINRA

registration status of Defendants Resolute and Homebound's brokers, and registration status of securities offered to be important in their decision to trust and invest with the Defendants Resolute, Homebound, Powell, Toth and Most. Further, a reasonable investor would consider information regarding how their investment funds are being allocated and availability of cash reserves to ensure the repayment of their capital contribution to be important in their decision to invest with the Defendants Homebound, PetroRock, Toth, and Etheredge.

105.    Defendants Resolute, Powell, Toth, and Most omitted material facts concerning the lack of support behind the projected profitability of oil and gas investments. inapplicability of tax benefits available to retirement account investors, true productions numbers of oil and gas wells their equity funds invested, the use of SEC-registered and FINRA-member broker/dealers, and the true status of the equity securities' exemptions from registration. Defendants Homebound, Homebound Financial, PetroRock, Toth, and Etheredge omitted material facts concerning the purpose and use of investors' funds, including the diversion of funds to repay older investors and facilitate Toth's self-interested transactions with other Defendants such as Minerva, and availability of cash reserves as advertised in their offering materials. These omissions were made knowing that the withholding of such information made it necessary under the circumstances to keep the above Defendants' statements and representations from being misleading.

106.    Plaintiffs and Class Members purchased the equity and debt securities that were sold within the Class Period. Plaintiffs and Class Members are within the statute of limitations pursuant to Tex. Gov't Code §4008.062(b) because it has been less than

three years since the Plaintiffs and Class Members could have been on notice of the Defendants' material omissions. Plaintiffs and Class Members were notified, or should have been discovered such omissions, when the SEC entered an Order against Defendants Resolute, Homebound, Powell, and Toth on September 24, 2021.

107. The omissions made by the above-mentioned Defendants have directly and proximately caused Plaintiffs and the Class Members to suffer serious economic loss. Plaintiffs and Class Members have lost substantial amounts in retirement savings leaving their financial future uncertain.

**C. Third Cause of Action: Control Person Liability Under Tex. Gov't Code §4008.055(a)**

108. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

109. This cause of action is brought pursuant to Tex. Gov't Code §4008.055(a) on behalf of the Plaintiffs and Class Members against the Defendants Toth, Powell, Etheredge, and Most as control persons of Resolute, Resolute's fundraising LLC's, Homebound, Homebound Financial, Homebound's lending subsidiaries, including PetroRock, Legacy Energy, and Choice Energy, and Minerva within the meaning of 7 Tex. Admin. Code §107.2(9).

110. Defendants Toth, Powell, Etheredge, and Most were control persons of the above-mentioned Institutional Defendants within the meaning of 7 Tex. Admin. Code §107.2(9) due to their power to direct or cause the direction of the institution's management and policies through ownership, contract, and positions as officers.

111. As control persons of the above-mentioned Institutional Defendants, Toth, Powell, Etheredge, and Most directly possessed the power to direct or cause the direction of the management and policies of such entities, including the issuance of their equity

and debt securities, oversight over the securities' offering materials, and strategy regarding the solicitation and advertising plan. As such, Toth, Powell, Etheredge, and Most directly controlled the above-mentioned Defendants in their securities offerings to Plaintiffs and Class Members, the contents of offering materials distributed to potential investors, and strategy to implement a gag of unlicensed and licensed "sales agents" charged with promoting and selling Resolute and Homebound's equity and debt securities.

112.   As control persons of the above-mentioned Toth, Powell, Etheredge, and Most are jointly and severally liable pursuant to Tex. Gov't Code §4008.055(a) with and to the same extent as the above-mentioned Defendants for their violations of 4008.052(a).

**D.  Fourth Cause of Action: Civil Conspiracy to Defraud Under Texas State Law**

113.   Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

114.   This cause of action contains elements derived from *Agar Corp. v. Electro Circuits International, LLC*, 580 S.W.3d 136, 141 (Tex. 2019), which requires: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."

115.   Civil Conspiracy under Texas State law is conditioned on a finding of a statutory violation that proximately caused the damages.

116.   Defendants Resolute, Powell, Toth, Homebound, and Etheredge created a network of individuals and entities assigned with the responsibility of promoting, advertising, administering, and even selling Resolute securities to the public. This network of individuals and entities included Defendants Wealth Formula, Prosperity Economic,

Foundations Investment Advisers, Financial Gravity, Hidden Wealth, Buck Joffrey, Brooke Nunes, Kim Butler, Chris Miles, Jeff Cronin, Chris Most, Devin Patel, and Chuck Oliver. The above-mentioned Defendants facilitated Resolute's continuous sale of securities during the Class Period by sending out emails and correspondence containing material omissions, distributing materials created by Resolute, Powell, Homebound, and Toth, containing material omissions, promoting Resolute and Homebound's investments on podcasts and other public means, and acting as brokers for Resolute and Homebound by directly soliciting the investment of funds from individuals' retirement accounts.

117.   Defendants Resolute and Homebound engaged the above-mentioned network of Defendants to willingly conduct a common course of action to defraud investors in violation of Tex. Gov't Code §4008.052(a) namely, the making and distributing of materials containing material omissions including unsupported and inaccurate projections of profitability for Resolute's oil and gas investments, the unavailability of tax benefits for retirement account investors, genuine well production based on the past performance of oil and gas wells, the use of SEC-registered and FINRA-member broker/dealers, the intention and use of investors' funds, their reliance on exemptions to avoid having to register their securities with the SEC, and truthful availability of cash reserves available in Homebound's PRMH Funds. Defendants Wealth Formula, Prosperity Economic, Foundations Investment Advisers, Financial Gravity, Hidden Wealth, Buck Joffrey, Brooke Nunes, Kim Butler, Chris Miles, Jeff Cronin, Chris Most, Devin Patel, and Chuck Oliver made these statements and omissions as part of an agreement with Resolute and Homebound to get the word out to as many investors

as possible without any due diligence as to the accuracy of the materials being distributed.

118. Defendants Resolute and Homebound performed multiple acts in furtherance of the conspiracy by making the above-mentioned omissions and misrepresentations in offering materials and engaging promoters to bolster, advertise, and explain Defendants Resolute and Homebound's equity and debt securities. Resolute and Homebound could not have completed their scheme to defraud investors but for the participation of their co-conspirators, which included Defendants Wealth Formula, Prosperity Economic, Foundations Investment Advisers, Financial Gravity, Hidden Wealth, Buck Joffrey, Brooke Nunes, Kim Butler, Chris Miles, Jeff Cronin, Chris Most, Devin Patel, and Chuck Oliver.

119. The collaboration by the Resolute, Homebound, Toth, Powell, Etheredge, Wealth Formula, Prosperity Economic, Foundations Investment Advisers, Financial Gravity, Hidden Wealth, Buck Joffrey, Brooke Nunes, Kim Butler, Chris Miles, Jeff Cronin, Chris Most, Devin Patel, and Chuck Oliver directly and proximately caused Plaintiffs and the Class Members to suffer serious economic loss. Plaintiffs and Class Members have lost substantial amounts in retirement savings making their financial future uncertain.

**E.  Fifth Cause of Action: Negligent Misrepresentation Under Texas State Law**

120. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

121. This cause of action contains elements derived from *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 443 (Tex. 1991), which requires: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary

interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."

122.   Defendants Resolute and Homebound omitted material facts in the course of their business and in transactions which they had a pecuniary interest, namely, Resolute, Powell, and Most's equity securities offerings, and Homebound, Toth, and Etheredge's debt securities.

123.   Resolute, Powell, Homebound, Toth, Etheredge, and Most's material omissions made their representations false when made to investors concerning the profitability of Resolute's oil and gas investments based on unsupported projections,  availability of tax benefits for retirement account investors, the true barrel production of Resolute's oil and gas wells, the registration status of their brokers/salespersons, intention and use of investor funds, exemption status of their equity and debt securities, and availability of cash reserves to pay back principal loan amounts in Homebound's PRMH Funds. Such false misrepresentations included: 1) Defendants Resolute, Powell, Toth, and Most's omission that distributed offering materials contained unrealistic and inaccurate oil and gas well profitability projections, enticing tax benefits that were unavailable to most investors, and unsupported oil and gas well production based on prior, inaccurate well performance data, 2) Defendants Resolute, Powell, and Most did not solely employ SEC-registered or FINRA-member broker-dealers to solicit their securities as advertised in their offering materials; 3) investments in the Homebound parties' debt securities were not all put towards oil and

gas ventures but were, in fact, being used to repay previous investors, thus, effectuating a Ponzi scheme; 4) the Homebound parties did not retain sufficient cash reserves to repay investors their principal investment in Homebound's PRMH Funds; and 5) Resolute and Homebounds' equity and debt securities were not exempt from registration as advertised in their offering materials.

124.    Defendants Resolute and Homebound did not exercise reasonable care or competence in failing to communicate complete and accurate information to the Plaintiffs and Class Members. The actual communications and representations with Plaintiffs and Class Members contained the above-mentioned omissions, which shielded investors from the reality of the securities being offered.

125.    Resolute and Homebound's negligent misrepresentations, and Plaintiffs' and Class Members' reliance, has directly and proximately caused serious economic loss. Plaintiffs and Class Members have lost substantial amounts in retirement savings making their financial future uncertain.

**F.   Sixth Cause of Action: Unjust Enrichment Under Texas State Law**

126.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

127.    This cause of action derives from *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010), which provides the doctrine of unjust enrichment to be available "when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage."

128.    Defendants Resolute, Powell, Toth and Most made material omissions in connection with the offer and sale of their equity securities. Such material omissions included the lack of support for the projected profitability of Resolute's oil and gas investments,

unavailability of tax benefits for retirement account investors, the realistic oil and gas well production projections that were based on prior, inaccurate oil and gas well performance data, the use of SEC-registered and FINRA-member broker/dealers, and the true status of the equity securities' exemption from registration. Defendants Homebound, Homebound Financial, PetroRock, Toth, and Etheredge omitted material facts concerning the purpose and use of investors' funds, including the diversion of funds to repay older investors and facilitate Toth's self-interested transactions with other Defendants such as Minerva, and the true availability of cash reserves as advertised in their offering materials.

129.   Defendants Resolute, Homebound, Toth, Powell, Etheredge, and Most accepted and retained a substantial benefit under these circumstances that makes it inequitable for them to retain without payment for its value.

130.   Resolute, Homebound, Toth, Powell, Etheredge, and Most have directly and proximately caused Plaintiffs and the Class Members to suffer serious economic loss through the retention of this economic benefit. Plaintiffs and Class Members have lost substantial amounts in retirement savings making their financial future uncertain.

**G.  Seventh Cause of Action: Breach of Contract Under Texas State Law**

131.   Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

132.   Defendants Homebound and PetroRock, under the direct control of Defendant Toth and Etheredge, entered into Loan Agreements with Plaintiffs and Class Members whereby investors would loan funds to Homebound's financing companies, such as Legacy Energy and Choice Energy.

133.     Plaintiffs and Class Members agreed to loan funds to Homebound's financing companies in exchange for assurances that such principal loans would be paid back, with interest, upon the investor's demand. Plaintiffs and Class Members also extended these loans under the impression that the funds were being used to finance PetroRock's oil and gas ventures, and they would further share in the venture's revenue.

134.     Defendants Homebound, PetroRock, Toth, and Etheredge failed to comply with the Loan Agreements and breached their obligations under the contracts by refusing to return Plaintiffs' and Class Members' principal loan amount, despite receiving written demand of such repayment. Homebound, PetroRock, Toth and Etheredge were also unable to make the required payments to investors due to their ongoing scheme of repaying prior investors.

135.     Defendants Homebound, PetroRock, Toth, and Etheredge have directly and proximately caused Plaintiffs and the Class Members to suffer serious economic loss through their failure to comply with the terms of the Loan Agreements. Plaintiffs and Class Members have lost substantial amounts in retirement savings making their financial future uncertain.

**H.  Eighth Cause of Action: Aider Liability Under Tex. Gov't. Code §4008.055(c)**

136.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

137.     This cause of action is brought pursuant to Tex. Gov't Code §4008.055(c) on behalf of Plaintiffs and putative Class Members against Defendants Wealth Formula, Partners for Prosperity, Foundations Investment Advisers, Financial Gravity, Hidden Wealth, Buck Joffrey, Brooke Nunes, Kim Butler, Chris Miles, Jeff Cronin, Devin

Patel, and Chuck Oliver based on their reckless disregard for the truth in aiding Defendants Resolute and Homebound with the sale of their Equity and Debt Funds.

138.   Defendants Wealth Formula, Partners for Prosperity, Foundations, Financial Gravity, Hidden Wealth, Joffrey, Nunes, Butler, Miles, Cronin, Patel, and Oliver aided Resolute and Homebound Resources during the Class Period by explaining their investment strategy to investors, recklessly boasting of the profitability of Resolute's oil and gas wells, tax benefits and suitability for high W-2 income earners, referring investors to purchase Resolute and Homebound securities, and generally advertising their oil and gas securities through various means, such as podcasts, emails, and investor phone calls.

139.   But for the promotion and advertisement conducted by Defendants Wealth Formula, Partners for Prosperity, Foundations, Financial Gravity, Hidden Wealth, Joffrey, Nunes, Butler, Miles, Cronin, Patel, and Oliver, Defendants Resolute and Homebound would have been unable to continue their fraudulent scheme of selling securities to investors based on material omissions and engaging in the above referenced Ponzi scheme.

140.   Therefore, Defendants Wealth Formula, Partners for Prosperity, Foundations, Financial Gravity, Hidden Wealth, Joffrey, Nunes, Butler, Miles, Cronin, Patel, and Oliver are jointly and severally liable for violations of Tex. Gov't Code §4008.052 to the same extent as Defendants Resolute and Homebound.

## **JURY TRIAL DEMANDED**

141.   Plaintiffs and Class Members hereby request and demand a jury trial for each and every cause of action permitting trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of the Class, demand judgment as follows:

142.     Determining that the instant action may be maintained as a class action under Federal Rules of Civil Procedure 23 and certifying Plaintiffs as the Class representatives;

143.     Requiring Defendants to pay compensatory damages jointly and severally in favor of the Plaintiffs and the Class for all damages sustained by reason of the acts and transactions alleged herein;

144.     Awarding Plaintiffs and Class Members recission, disgorgement, and all other remedies in equity or in law pursuant to the Securities Act;

145.     Awarding Plaintiffs and Class Members prejudgment and post-judgment interests, as well as their reasonable attorneys' fees with interest, expert fees, and other costs; and

146.     Awarding such further relief as the Court deems just and proper.


DATED: October 19, 2022                    Respectfully Submitted,

_/s/ William B. Federman_
William B. Federman, TBA #00794935
John C. Sherwood, TBA #18254700
FEDERMAN & SHERWOOD
212 W. Spring Valley Road,
Richardson, TX 75081
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

Gary S. Menzer *
Jennifer L. Weiss *
**MENZER & HILL, P.A.**
7280 W. Palmetto Pk. Rd. Ste 301-N
Boca Raton, FL 33433
Telephone: (561) 327-7207

Facsimile: (561) 880-8449
gmenzer@menzerhill.com
jweiss@menzerhill.com

*Pro hac vice application forthcoming

***ATTORNEYS FOR PLAINTIFFS***