IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL D CRUZ et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-02349-E |
| | § | |
| RESOLUTE CAPITAL PARTNERS LTD LLC et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Powell and Resolute Capital Partners LTD, LLC (RCP)'s motion to dismiss or stay proceedings and compel arbitration. (Doc. 66). The Court refers to Powell and RCP collectively as "RCP Parties." Further, before the Court is Defendants Toth; Homebound Resources, LLC (Homebound); and Homebound Financial Group, LP (Homebound Financial)'s motion to stay proceedings and to compel arbitration. (Doc. 69). The Court refers to Toth, Homebound, and Homebound Financial collectively as "Homebound Parties."

Plaintiffs have responded to these motions, and the corresponding Defendants have replied. Having been fully briefed, the Court GRANTS the RCP Parties and Homebound Parties' respective motions compelling arbitration and correspondingly STAYS all proceedings in this matter, pending the arbitration(s). The Court further administratively closes this proceeding, pending the arbitration(s) The Court enumerates its reasoning, hereunder.

I.  BACKGROUND

This case arises from disputes involving several investments. Plaintiffs initiated this litigation individually and on behalf of a class[1] on November 19, 2022. (Doc. 1). Regarding their investments, the eight named Plaintiffs assert:

> 29. Plaintiff Rohit Khanolkar is an individual domiciled and residing in Frisco, Texas. Plaintiff Khanolkar invested $400,000.00 in Resolute SEA VII on July 6, 2018.
>
> 30. Plaintiff Paul D. Cruz is an individual domiciled in Austin, Texas. Plaintiff Cruz invested $50,000.00 in Resolute SEA VII on December 12, 2018, and on December 29, 2018.
>
> 31. Plaintiff Ariel Kumpinsky is an individual domiciled in Austin, Texas. Plaintiff Kumpinsky invested $75,000.00 in Resolute SEA VII on August 12, 2019.
>
> 32. Plaintiffs Heather and Bryant Smith are individuals domiciled in Georgetown, Texas. Plaintiffs Heather and Bryant Smith invested approximately $150,000.00 with Homebound on November 19, 2019.
>
> 33. Plaintiff Sharon Gardner is an individual domiciled and residing in Barefoot Bay, Florida. Plaintiff Gardner purchased a promissory note and loaned $136,000.00 to Legacy Energy at a 9% rate on July 11, 2018.
>
> 34. Plaintiffs Arlen Leiner and Lisa Leiner are individuals domiciled and residing in Land O Lakes, Florida. Plaintiffs purchased promissory notes through Choice Energy Holdings-III, LLC on August 26, 2019, October 22, 2019, and November 6, 2019. The couple also purchased promissory notes through Advantage Capital Holdings-I, LLC on November 6, 2019, for a total investment of over $500,000.00. The Plaintiffs have suffered an economic loss of $340,125.00, including principal and interest amounts.

(Doc. 1 at 11-12). Plaintiffs allege claims against both the RCP Parties and Homebound Parties—in various combinations, which include RCP and Homebound—(i) for "Violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5"; (ii) for "Offeror or Seller Liability: Untruth or Omission Under Tex. Gov't Code §4008.052(a)"; (iii) for "Control Person

---

[1] No class certification has occurred, at this time.

Liability Under Tex. Gov't Code §4008.055(a)"; (iv) for "Civil Conspiracy to Defraud Under Texas State Law"; (v) for "Negligent Misrepresentation Under Texas State Law"; (vi) for "Unjust Enrichment Under Texas State Law"; (vii) for "Breach of Contract Under Texas State Law"; and (viii) for "Aider Liability Under Tex. Gov't. Code §4008.055(c)." (Doc. 1 at 30-41).

The RCP Parties and Homebound Parties have each moved, *inter alia*, to compel arbitration and a corresponding stay of proceedings. (Docs. 66, 69). Specifically, the RCP Parties and Homebound Parties both assert that all claims that Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners assert are subject to arbitration. (Docs. 66, 69). Plaintiffs have responded regarding arbitration. (Docs. 92, 93). The RCP Parties and Homebound Parties have each replied. (Docs. 103, 110). Having been fully briefed, the issue is ripe for consideration.

## II.   LEGAL STANDARD

### A. Arbitration Under the Federal Arbitration Act

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation—whether the parties entered into *any arbitration agreement at all. Kubala v. Supreme*

*Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Kubala*, 830 F.3d at 201 (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Courts apply "the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073–74 & n. 5 (5th Cir.2002)). In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

### B. Delegation Clauses Within an Arbitration Agreement

However, when an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow

the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

"[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. *But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause*—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala*, 830 F.3d at 202 (emphasis added).[2] The Fifth Circuit has further explained that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted); *see, e.g.*, *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (discussing the same).

### III. ANALYSIS

#### A. Whether an Agreement to Arbitrate Has Been Formed

Because the underlying agreements involving both the RCP Parties and Homebound Parties are the same, the Court addresses the corresponding arbitration issues jointly. Here, the Parties' each brief whether the FAA applies to their agreements.[3] First, the Court must determine

---

[2] In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between [(i)] 'validity' or 'enforceability' challenges and [(ii)] 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

[3] Plaintiffs' briefing does neither asserts nor briefs application of the Texas Arbitration Act (TAA). (*See* Docs. 92 and 93). Additionally, Plaintiffs' briefing states, "Plaintiffs do not dispute the matter of interstate commerce, or that the Business Loan Agreements Defendants rely on to assert arbitration are in fact written." (Doc. 93 at 3).

whether the respective Parties have formed an agreement to arbitrate. *See Edwards*, 888 F.3d at 744. Under Texas law, a party must establish contract formation by proving "an offer and acceptance and a meeting of the minds on all essential terms." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Principal Life Ins. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454-55 (Tex. App.—Dallas 2012, pet. denied)).

Here, the declaration of Defendant Powell—which both the RCP Parties and Homebound Parties rely upon—describes the agreements relating to Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners' investments:

> In or about December 2018, Plaintiff Paul Cruz ("Cruz") invested in Strategic Energy Assets VII, LLC ("SEA VII") by making a loan of $50,0000 [sic]. Cruz executed an Investment Agreement which, in section 11, requires arbitration of claims in Wilmington, Delaware.
> . . . .
> In or about June 2018, Plaintiff Sharon Gardner ("Gardner"), through IRA Services Trust Company CFBO: Sharon Gardner IRA 611086, invested in Legacy Energy, LLC ("Legacy") by making a loan of $136,000.00. Gardner executed a Business Loan Agreement which requires arbitration to be conducted in Dallas, Texas as provided in section 5.5.2 (page 10).
> . . . .
> In or about July 2018, Plaintiff Rohit Khanolkar ("Khanolkar"), through the Rupali and Rohit Khanolkar Family Revocable Living Trust, invested in SEA by making a loan of $400,000.00. Khanolkar executed an Investment Agreement which, in section 11, requires arbitration of claims in Wilmington, Delaware.
> . . . .
> In or about August 2019, Plaintiff Ariel Kumpinsky ("Kumpinsky") invested in SEA by making a loan of $75,000.00. Kumpinsky executed an Investment Agreement which, in section 11, requires arbitration of claims in Wilmington, Delaware.
> . . . .
> In or about December 2019, Kumpinsky made another investment, but this one in Choice Energy Holdings – III, LLC. Kumpinsky executed a Business Loan Agreement which requires arbitration to be conducted in Dallas, Texas as provided in section 5.5.2 (page 11).
> . . . .
> In or about August 2019, Plaintiffs Arlen and Lisa Leiner (the "Leiners") invested in Choice Energy Holdings – III, LLC by making a loan of $50,000.00. The Leiners executed a Business Loan Agreement which requires arbitration to be conducted in Dallas, Texas as provided in section 5.5.2 (page 11).

(Doc. 66-1 at 3-5; Doc. 69-1 at 2-4) (emphasis omitted).[4] The corresponding appendix attached to Powell's declaration is comprised of the six agreements that Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners executed.[5] (Doc. 66-1 at 6-78; Doc. 69-1 at 5-77).

The record of agreements shows Plaintiffs Cruz, Khanolkar, and Kumpinsky each executed "Strategic Energy Assets VII, LLC Invest Agreement(s)," (SEA VII Agreements)—which Powell executed as the authorized signatory of Resolute Capital Managers LLC, the manager of Strategic Energy Assets VII, LLC. (Doc. 66-1 at 13, 38, 47; Doc. 69-1 at 12, 37, 46). Each of the SEA VII Agreements contain the same arbitration provision:

> **Right to Arbitrate Claims**. If any kind of legal claim arises between us, either of us will have the right to arbitrate the claim, rather than use the courts. There are only three exceptions to this rule. First, we will not invoke our right to arbitrate a claim you bring in Small Claims Court or an equivalent court, if any, so long as the claim is pending only in that court. Second, we have the right to seek an injunction in court if you violate or threaten to violate your obligations. Three, disputes arising under the Operating Agreement, the Participation Agreement, or the Joint Operating Agreement will be handled as set forth in those agreements.
> . . .
> **Place of Arbitration; Rules**. All arbitration will be conducted in Wilmington, Delaware, unless we agree otherwise in writing in a specific case. All arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association.

(Doc. 66-1 at 9-10, 33-34, 43-44; Doc. 69-1 at 8-9, 32-33, 42-43) (emphases in original).

The record of agreements shows Plaintiffs Gardner, Kumpinsky, and the Leiners each executed "Business Loan Agreement(s)"—which Defendant Toth executed as the authorized signatory of both (i) Resolute Capital Partners LTD., the manager of Legacy Energy, LLC and (ii) Petrorock Mineral Holdings, LLC, the manager of Choice Energy Holdings – III, LLC,

---

[4] Powell's declaration contains neither testimony nor attaches corresponding written agreements regarding Plaintiffs Heather Smith or Bryant Smith.

[5] Both Arlen Leiner and Lisa Leiner executed the same agreement. (Doc. 66-1 at 78; Doc. 69-1 at 77).

respectively. (Doc. 66-1 at 28, 63, 78; Doc. 69-1 at 27, 62, 77-78). The Business Loan Agreements that Kumpinsky and the Leiners signed contain the same arbitration provision:

> 5.5.1. Arbitration Claims. If any kind of legal claim arises between Lender and Borrower or the Related Parties, the parties shall arbitrate the claim rather than use the courts. There are only three exceptions to this covenant. First, Borrower will not invoke its right to arbitrate a claim which Lender brings in Small Claims Court or an equivalent court, if any, so long as the claim is pending only in that court. Second, Borrower has the right to seek an injunction in court if Lender violates or threatens to violate his/her/its obligations under the Business Loan Documents. Third, the Representative has the right, on behalf of the Lender Parties, to exercise foreclosure of the security interest held by Lender Parties in the Project Loan Documents.
>
> 5.5.2. Place of Arbitration; Rules. All arbitration will be conducted in Dallas, Texas, unless both Lender and Borrower agree otherwise in writing in a specific case. All arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association.

(Doc. 66-1 at 60-61, 75-76; Doc. 69-1 at 59-60, 74-75). The Business Loan Agreement that Gardner signed contains the following arbitration provision:

> 5.5.l. Arbitration Claims. If any kind of legal claim arises between Lender and Borrower or the Related Parties, the parties shall arbitrate the claim rather than use the courts. There are only two exceptions to this covenant. First, Borrower will not invoke its right to arbitrate a claim which Lender brings in Small Claims Court or an equivalent court, if any, so long as the claim is pending only in that court. Second, Borrower has the right to seek an injunction in court if Lender violates or threatens to violate his/her/its obligations under the Business Loan Documents.
>
> 5.5.2. Place of Arbitration; Rules. All arbitration will be conducted in Dallas, Texas, unless both Lender and Borrower agree otherwise in writing in a specific case. All arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association.

(Doc. 66-1 at 26; Doc. 69-1 at 25). The Business Loan Agreements further define "Related Parties" to include the affiliates (and managers) of various Resolute and Homebound-named entities.

Defendants assert that the Parties' agreements constitute formation agreement(s) to arbitrate. Plaintiffs do not substantively challenge the formation of agreement(s) to arbitrate. Upon

review of the pleadings and the record of the agreements, the Court must find and conclude that Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners formed agreement(s) to arbitrate.

### B. Whether The Purported Delegation Clause Delegates the Claims and Issues Raised to the Arbitrator

The RCP Parties and Homebound Parties both assert that all claims that Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners assert are subject to a delegation clause in their respective arbitration agreements. In response, Plaintiffs advance several arguments regarding arbitrability—challenging the scope and application of the arbitration agreements. But Plaintiffs assert no specific challenge to the delegation clauses within the arbitration agreements. *See Edwards*, 888 F.3d at 744.

As excerpted above, each of the agreements that Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners entered contain the language that "All arbitration will be conducted before a single arbitrator in accordance with the rules of the American Arbitration Association." (Doc. 66-1 at 9-10, 26, 33-34, 43-44, 60-61, 75-76; Doc. 69-1 at 8-9, 25, 32-33, 42-43, 59-60, 74-75). "These [American Arbitration Association] rules state that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) "[T]he express adoption of [the American Arbitration Association] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac*, 687 F.3d at 675. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 529 (2019).

Because of the agreements' adoption of the American Arbitration Association Rules and the delegation clause, the Court finds and concludes Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners' claims must be referred to arbitration to resolve any disputes of arbitrability. *See Kubala*, 830 F.3d at 203 (stating that if an agreement contains a delegation clause, the court "must refer the claim to arbitration absent some exceptional circumstance"); *Petrofac*, 687 F.3d at 675 (determining that—given the parties' adoption of the American Arbitration Association Rules—the arbitration panel properly determined whether the issue of damages was arbitrable). The court GRANTS the RCP Parties and Homebound Parties' motions to compel arbitration against Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners. Consequently, the Court pretermits any discussion regarding Plaintiffs' various challenges to the scope and application of the arbitration agreements. *See Kubala*, 830 F.3d at 202; *Henry Schein*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 529.

C.  **Whether to Stay Pending Litigation**

Anticipating a compelling of arbitration, the RCP Parties and Homebound Parties seek a stay of the Court's proceedings. The RCP Parties and Homebound Parties first assert the proceedings should be stayed under the mandatory stay found in 9 U.S.C. § 3. Plaintiffs refer to briefing in a separate motion from Defendants[6] but do not otherwise respond to the request for a mandatory stay.

In cases in which one of the parties to a valid arbitration agreement brings a claim to a district court, the court "shall stay the trial of the action until such arbitration" is resolved. 9 U.S.C. § 3. "[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration[.]" *Alford v. Dean*

---

[6] (*See generally* Doc. 68).

*Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Generally, this section applies only to parties to the arbitration agreement. *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001). As concluded above, a stay of Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners' claims is warranted because those Plaintiffs' claims are referable to arbitration. *See Alford*, 975 F.2d at 1164.

However, in this case two named Plaintiffs—Heather Smith and Bryant Smith—are not signatories to the arbitration agreements discussed above. (*See generally* Docs. 66-1; 69-1). Plaintiffs further purport to represent nonnamed putative class members. Whether the class the Plaintiffs describe meets the specific requirements of Rule 23 is not an issue before the Court. *See* Fed. R. Civ. P. 23. However, Plaintiffs' briefing suggests that the putative class members have in some way joined this litigation. (*See* Doc. 93 at 5). To be clear, Plaintiff has not moved for class certification, and the Court has not granted class certification, at this time. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) ("The party seeking certification bears the burden of proof.").[7] As the Supreme Court has explained:

> [A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified. *See Smith v. Bayer Corp.*, 564 U.S. ——-, ——, 131 S.Ct. 2368, 2380, 180 L.Ed.2d 341 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties"); *id.*, at ——, 131 S.Ct., at 2379 ("'[A] nonnamed class member is [not] a party to the class-action litigation before the class is certified'" (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16, n. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002) (SCALIA, J., dissenting))); Brief for Respondent 12 (conceding that "a damages limitation ... cannot have a binding

---

[7] The Fifth Circuit has explained:

> A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 573 (5th Cir.1995). The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

effect on the merits of absent class members' claims unless and until the class is certified").

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593, 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013). As such, the nonnamed, putative class members have not joined this litigation, at this time.

Notwithstanding, the Fifth Circuit has held that held that a stay of proceedings may be applied with respect to non-signatories if "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a 'critical impact' on the arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343-55 (5th Cir. 2004); *see also, e.g.*, *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (discussing the same). "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343.

Here, it is undisputed that the Smiths' litigation (i) involve the same operative facts as the other Plaintiffs and (ii) several (if not all) of the claims asserted are inherently inseparable from the other Plaintiffs' claims. Furthermore, permitting the Smiths to proceed with this litigation could destroy Defendants' right to a meaningful arbitration. As plead, the Smiths' claims hinge on the same alleged conduct and the same causes of action. Given how intertwined the claims are, a decision from this Court could influence the outcome of the arbitration. In addition, allowing the case to proceed in this Court could allow the Plaintiff to obtain discovery that it would not be able to under American Arbitration Association rules. *See BOKF, NA v. Wise*, No. 3:18-CV-794-N, 2019 WL 7902963, at *1 (N.D. Tex. Apr. 25, 2019) (discussing concerns with discovery while arbitration proceeds under FINRA rules). Thus, the Court concludes that permitting the Smiths' suit to go forward "would undermine the arbitration proceedings" between Plaintiffs and

Defendants, "thereby thwarting the federal policy in favor of arbitration." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir. 2002) (staying non-signatory's claims when signatory's claims were compelled to arbitration). The Court therefore GRANTS the RCP Parties and Homebound Parties request to enter a mandatory stay of all proceedings—including those involving non-signatories to the arbitration agreement(s)—in this case.

Nevertheless, the Homebound Parties further request a discretionary stay of the proceedings "given the significant overlap between those facts and claims and the facts and claims that will be at issue in arbitration." (Doc. 69 at 13). Plaintiffs respond that "[i]t would be judicially inefficient to stay some claims until the finalization of multiple arbitrations, which would result in prolonged litigation and differing outcomes for Plaintiffs and Class Members." (Doc. 93 at 5).

Generally, a case may still be stayed "in accordance with the court's inherent authority." *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. H-07-2950, 2009 WL 960080, at *5 (S.D. Tex. Apr. 7, 2009). A federal district court's authority to issue a discretionary stay of litigation pending arbitration—even as to claims between non-arbitrating parties—lies in the court's inherent power to control its docket. *See Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("[I]t will lie within the district court's discretion to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket.") (citing *Moses H. Cone Mem 'l Hosp.*, 460 U.S. at 20 n. 23). As another Northern District court has explained:

> The factors for granting a non-signatory's request for mandatory stay under the FAA are also considered in determining whether a discretionary stay is appropriate. *See, e.g., Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 12-2183, 2013 WL 2903083, at *8 (E.D. La. June 12, 2013); *see also Broussard v. First Tower Loan, LLC*, No. CV 15-1161, 2016 WL 879995, at *6 (E.D. La. Mar. 8, 2016) ("Several courts in this circuit have relied on the factors discussed in *Waste Management* to determine whether a discretionary stay is appropriate.") (collecting cases).

> If the facts and claims underlying the arbitration and litigation "significantly overlap," a discretionary stay pending arbitration is appropriate, "[e]ven if the operative facts are not identical and the claims are not 'inherently inseparable.' " *Suzlon Infrastructure, Ltd. v. Pulk*, No. CIV. A. H-09-2206, 2010 WL 3540951, at *8 (S.D. Tex. Sept. 10, 2010); *see also Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 WL 3351291, at *2 (S.D. Miss. June 15, 2016) ("District courts within the Fifth Circuit have held that it is not absolutely necessary that the claims be inherently inseparable in order to justify a discretionary stay; significant overlap of claims is sufficient.") (citations omitted); *Jones Walker, LLP v. Petaquilla Minerals, Ltd.*, No. 14-1203, 2015 WL 3772670, at *5 (E.D. La. June 17, 2015) ("A district court may exercise its discretion to impose a stay pending arbitration, even if the operative facts are not identical and the claims are not inherently inseparable, as long as the facts and claims forming the basis for the arbitration and litigation proceedings significantly overlap.") (quotations and citations omitted).

*Neukranz v. Conestoga Settlement Servs., LLC*, No. 3:19-CV-1681-L-BH, 2020 WL 4679542, at *4 (N.D. Tex. July 14, 2020), *report and recommendation adopted*, No. 3:19-CV-1681-L, 2020 WL 4673076 (N.D. Tex. Aug. 12, 2020). The Court adopts the reasoning from *Neukranz*, quoted above. As concluded above, a mandatory stay under the *Waste Management* factors is appropriate. For those same reasons, the Court concludes that a discretionary stay for all Plaintiffs is likewise appropriate because of the Court's orders herein regarding arbitration. The Court GRANTS the Homebound Parties' motion to stay all proceedings in this matter.

Additionally, to reduce the burdens on the Court and the Parties of maintaining this as a pending case during the stay, the Court concludes in its discretion that this action should be administratively closed, for statistical purposes, pending resolution of the arbitration(s).

### IV. CONCLUSION

For the reasons enumerated above, the Court GRANTS the RCP Parties and Homebound Parties motions compelling arbitration. The Court further grants the RCP Parties and Homebound Parties motions requesting a stay of the proceedings. Accordingly, the Court enters the following orders:

1. IT IS ORDERED THAT all of Plaintiffs Cruz, Gardner, Khanolkar, Kumpinsky, and the Leiners's claims are compelled to the corresponding arbitration(s) with the RCP Parties and the Homebound Parties, respectively.

2. IT IS ORDERED THAT all remaining pending motions and proceedings in this Court are immediately STAYED, pending resolution of the arbitration(s). The pending motions before the Court shall not to be terminated.

3. IT IS ORDERED THAT this case shall be administratively closed for statistical purposes, pending resolution of the arbitration(s). The Parties shall not make further filings into this case except (i) for the reports regarding the status of arbitration—instructed hereunder—and (ii) on leave of court. *Inter alia*, the case may be re-opened in the future, without payment of filing fees, upon written motion from any party after conclusion of all arbitration proceedings.

4. IT IS ORDERED THAT the parties shall file a report regarding the status of the arbitration(s) every one-hundred-and-twenty (120) days after the date of this Order.

**This is not a final order.** The Clerk of Court is DIRECTED to ADMINISTRATIVELY CLOSE this action (No. 3:22-CV-02349-E). The Clerk of Court shall transmit to the Parties a true copy of this Order.

**SO ORDERED.**

20th day of April, 2023.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE